UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BABATUNDE OLABOPO,

                Plaintiff,                              **MEMORANDUM AND ORDER**
                                                                     13-CV-5052 (RRM) (LB)

   - against -

MILINDA HENRY GOMES, THE CITY OF NEW
YORK,[1] NEW YORK POLICE DEPARTMENT,
NORRIS (BADGE #6804), TJORNHOM (BADGE
#6010), ZALESKI (BADGE #8987), ZIELINSKI
(BADGE #8664), NEW YORK CITY
DEPARTMENT OF BUILDINGS, WALTER
OLSEN (BADGE #2186), FDNY, JANE
BRAGEN, GEORGE SOTIROFF, VERRON
LEWIS, BEST CENTURY REALTY
CORPORATION, ACTUAL BEST CENTURY
REALTY CORPORATION, and JON SILVERI,

                Defendants.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff *pro se* Babatunde Olabopo brings this action against defendants Milinda Henry Gomes, the City of New York (the "City"), the New York City Police Department (the "NYPD"), NYPD officers identified as Norris, Tjornhom, Zeleski, and Zielinski,[2] the New York City Department of Buildings, Walter Olsen, the Fire Department of the City of New York (the "FDNY"), Jane Bragen, George Sotiroff, Verron Lewis, Best Century Realty Corporation, Actual Best Century Realty Corporation, and Jon Silveri, alleging causes of action based on 42 U.S.C. §§ 1981, 1983, and 3604, the Fair Housing Act (the "FHA"), and the Fourth Amendment, as well as what appear to be several common law causes of action. (Am. Compl. (Doc. No. 6).)

---

[1] Plaintiff's amended complaint names both "The City of New York" and "City of New York" as defendants.

[2] Defendants have identified these parties as Detective Nicholas Norris, Officer Leif Tjornhom, Sergeant Robert Zaleski, and Officer Steven Zielinski. (Mem. in Supp. (Doc. No. 29) at 1.)

Currently pending before the Court is a motion to dismiss filed by the City, Lewis, Norris, Olsen, Sotiroff, Tjornhom, Zaleski, and Zielinski. (Mot. to Dismiss (Doc. No. 29).) For the reasons set forth below, the motion is granted.

## BACKGROUND

The following allegations are taken from Olabopo's amended complaint and, for purposes of this motion to dismiss, are accepted as true. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 97 n.1 (2d Cir. 2015).

Around September 2008, Olabopo alleges that he was savagely attacked by robbers in Brownsville, Brooklyn. (Am. Compl. at ¶ 4.) While fleeing from the robbers, Olabopo ran into a marked NYPD vehicle and sought assistance from the officers. (*Id.*) The NYPD officers did not stop to assist Olabopo because they were on their way to a "special assignment" and did not want to be delayed. (*Id.*) Olabopo was attacked again and was later taken from the crime scene to the Kings County Hospital for emergency surgery. (*Id.*) Upon his release, Olabopo alleges that he sought NYPD assistance to investigate the crime and the police officers who left Olabopo at the crime scene, but the NYPD refused to investigate the matter.[3] (*Id.*)

Around March 2009, Olabopo alleges that his landlord, defendant Milinda Gomes, physically assaulted and threatened to kill Olabopo at his residence in Staten Island, NY. (*Id.* at ¶ 5.) The NYPD refused to take any action against the landlord, but requested an ambulance to take Olabopo to the hospital for treatment. (*Id.*) Olabopo filed a complaint against the NYPD for refusing to take action against Gomes. (*Id.*)

---

[3] Olabopo alleges several other incidents of NYPD inaction. (*See* Am. Compl.) Specifically, on September 24, 2010, Olabopo alleges that he was attacked at the Staten Island Ferry Terminal in front of an NYPD officer from the 120th Precinct. (Am. Compl. at ¶ 16.) Olabopo further alleges that the NYPD officer, despite witnessing the event, refused to investigate the matter. (*Id.*) Additionally, on October 22, 2012, Olabopo alleges that he was harassed and "savagely attacked" and called racial and homophobic slurs by a group of people "wielding law enforcement badges" on Staten Island. (*Id.* at ¶ 20.) The NYPD officers who responded did not take a report from or assist Olabopo. (*Id.*)

Olabopo's primary contention lies with the events surrounding September 9, 2010, when the NYPD "stormed" his apartment on Staten Island and, along with defendant Department of Buildings Inspector Olsen, evicted Olabopo and his mother without a court order. (*Id.* at ¶¶ 6–10.) Olabopo alleges that the NYPD officers harassed him and his mother during this process.[4] (*Id.* at ¶ 9.) Defendant New York City Department of Buildings listed violations against the apartment, which Olabopo suggests is an attempt to "cover up" the "illegal search and seizure against the plaintiff and his property." (*Id.* at ¶ 13.) Olabopo alleges that the NYPD and Olsen violated his Fourth Amendment right to privacy and against unreasonable searches and seizures, are liable for an illegal search, and caused personal injury to Olabopo. (*Id.* at ¶ 9.) Olabopo subsequently contacted the NYPD on October 4, 2010, to regain his personal property from his landlord, Gomes; however, Sergeant Zaleski and Officer Zielinski refused to take any action against the landlord or allow Olabopo or his mother to file a police report.[5] (*Id.* at ¶ 17.) In response, Olabopo filed a police report and a formal complaint against the NYPD for discrimination. (*Id.*)

On September 2, 2011, Olabopo responded to an ad on Craigslist posted by defendant Best Century Realty Corporation, which listed an apartment for rent. (*Id.* at ¶ 18.) Olabopo paid an application fee for the apartment, but only after seeking assurances from defendant Best Century Realty Corporation that the apartment was legal and above street level. (*Id.*) Defendant Best Century Realty Corporation made said assurances; however, the apartment was located

---

[4] In addition, Olabopo alleges that the NYPD used excessive and unreasonable force against him and his mother. (Am. Compl. at ¶ 11.) Olabopo alleges that the NYPD officers forcefully conducted a strip-search of him and that, as a result of the excessive and unreasonable use of force, Olabopo's mother started experiencing heart problems. (*Id.* at ¶¶ 6, 11.) Defendant emergency medical technician Bragen responded, and Olabopo alleges that she did not help his mother, but instead "joined in the abuse . . . perpetrated against the plaintiff and his mother." (*Id.* at ¶ 11.)

[5] Olabopo additionally alleges that the Department of Housing Preservation and Development acted negligently with regards to repairs on Olabopo's apartment, which enabled defendant Gomes to steal Olabopo's property. (Am. Compl. at ¶ 15.)

below street level. (*Id.*) After Olabopo unsuccessfully demanded that his money be returned, he contacted the NYPD for assistance. (*Id.*) The NYPD refused to assist.[6] (*Id.*)

In addition, Olabopo alleges that he has been stopped and frisked by the NYPD on numerous occasions since 2008 due to racial discrimination. (*Id.* at ¶ 21.)

Olabopo filed the original complaint in this matter on September 9, 2013, (Compl. (Doc. No. 1)), and filed an amended complaint on January 8, 2014 (Am. Compl.). The amended complaint includes 18 separate counts: two counts of breach of contract, two counts of fraud, trespass to chattel, burglary, personal injury, constructive eviction, harassment, two counts of violation of § 1983 of the United States Constitution, three counts of violations of Fair Housing Acts, three counts of violation of § 1981 of the United States Constitution, and sexual harassment. (*See generally* Am. Compl.) Defendants Lewis, Norris, Olsen, Sotiroff, the City of New York, Tjornhom, Zaleski, and Zielinski now move to dismiss Olabopo's claims against them. (Mot. to Dismiss.) Olabopo failed to respond to defendants' motion.[7]

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[6] Olabopo also alleges that he faced many incidents of discrimination and harassment at the City of New York Department of Housing and Preservation shelter where he came to reside after the incident with defendant Best Century Realty Corporation. (Am. Compl. at ¶ 19.) Olabopo was ultimately forced to leave the shelter for safety reasons. (*Id.*)

[7] The Court granted six of Olabopo's requests for an extension of time to respond to defendants' motion, but he failed to file any opposition papers.

4

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a Rule 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The determination whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

While *pro se* plaintiffs must satisfy these pleading requirements, federal courts are "obligated to construe a *pro se* complaint liberally." *See Harris*, 572 F.3d at 71–72 (citations omitted). In other words, trial courts hold *pro* se complaints to a less exacting standard than they apply to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008). Since *pro se* litigants "are entitled to a liberal construction of their pleadings, [their complaints] should be read to raise the strongest

5

arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). Nonetheless, when a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the court should not hesitate to dismiss his claim. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted). In addition, "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee." *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000).

The fact that defendants' motion to dismiss is unopposed does not in and of itself justify dismissal of the action, as the Court is still required to assess whether the plaintiff has sufficiently pled a claim for which relief can be granted. *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

## DISCUSSION

### I. Non-Suable Entities

Olabopo asserts claims against the NYPD, the FDNY, and the New York City Department of Buildings in his complaint. These are non-suable entities, and therefore, Olabopo's claims against these parties are dismissed. *See, e.g.*, *McMillan v. Dep't of Bldgs.*, No. 12-CV-318 (ENV), 2012 WL 1450407, at *2 (E.D.N.Y. Apr. 26, 2012) ("[T]he New York City Department of Buildings, which is a city agency, is not a suable entity."); *Petway v. City of New York*, No. 02-CV-2715 (NGG), 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005) ("Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity [of a government agency] to sue or be sued must be determined by the law of the State in which the district court is held. The State of New York has neither expressly given nor necessarily implied that the NYPD [or]

FDNY . . . can sue or be sued in their individual capacities. Plaintiff's claims against the FDNY [and] NYPD . . . are therefore dismissed." (internal quotation marks and citation omitted)).

## II. Personal Involvement of Defendants Lewis, Norris, Sotiroff, and Tjornhom

Olabopo has failed to state a claim against defendants Lewis, Norris, Sotiroff, and Tjornhom because he has not plausibly alleged any personal involvement of these named defendants.

"A complaint should offer 'specification' as to the 'particular activities by any particular defendant.'" *Am. Sales Co. v. AstraZeneca AB*, No. 10-CV-6062 (PKC), 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) (quoting *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007)). "'[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (quoting *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)).

Here, although Lewis, Norris, Sotiroff, and Tjornhom are named in the caption, the complaint itself lacks any facts that tend to suggest that Lewis, Norris, Sotiroff, and Tjornhom were personally involved in the alleged constitutional violations. Norris and Tjornhom are not mentioned anywhere in the complaint besides the caption. (*See* Am. Compl.) Regarding Lewis and Sotiroff, Olabopo prefaces the facts of the complaint with the statement that "[f]or purposes of this complaint . . . 'HPD officers' refer to City of New York, Department of Housing Preservation and Development employees: George Sotiroff and Verron Lewis." (Am. Compl. at ¶ 2.) Olabopo, however, fails to allege any facts involving Lewis and Sotiroff. At the conclusion of the complaint, Olabopo alleges, "HPD Officers are liable under this act by discriminating against the plaintiff in providing shelter or storage facilities." (*Id.* at 10 (ECF

7

pagination).) Even construing Olabopo's *pro se* complaint liberally, this conclusory statement that Lewis and Sotiroff discriminated against him fails to provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. All claims alleged against Lewis, Norris, Sotiroff, and Tjornhom are therefore dismissed because Olabopo has not adequately plead their personal involvement in the alleged violations of his rights.

### III. No Affirmative Constitutional Right to Governmental Aid

Olabopo has also failed to state a claim against Zaleski and Zielinski because refusing to take police action or to follow a private citizen's directive does not violate the Constitution.

Generally, the allegation that a police officer refused to take police action is not a cognizable constitutional violation. *See, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). "[P]olice officers have discretion regarding whether to conduct investigations or to make arrests, and are charged with acting for the benefit of the public, and not for that of private citizens, who have no enforceable entitlement to particular outcomes." *Burton v. New York Police Dep't*, No, 11-CV-4071 (SLT), 2011 U.S. Dist. LEXIS 105803, at *7–8 (E.D.N.Y. Sept. 1, 2011) (dismissing for failure to state a claim a plaintiff's allegation that the defendant NYPD officers violated her constitutional rights by refusing to take a criminal complaint or file a police report regarding her claims).

Here, Olabopo alleges that on October 4, 2010, he "sought the assistance of the NYPD against the landlord for refusing the plaintiff and his mother possession of their personal belongings." (Am. Compl. at ¶ 17.) According to Olabopo, the responding officers, Zaleski and Zielinski "refused to take any action against the landlord or allow the plaintiff or his mother to file a police report." (*Id.*) Olabopo has failed to allege a cognizable constitutional claim against defendants Zaleski and Zielinski because he has no affirmative right to governmental aid and no

8

constitutional right to direct officers to take a certain actions against private actors. *See Matican*, 524 F .3d at 155. Accordingly, all claims against Zaleski and Zielinski are dismissed.

### IV. Allegations against Department of Buildings Inspector Olsen

Olabopo asserts that the alleged eviction suffered on September 9, 2010 gives rise to a Fourteenth Amendment due process claim for deprivation of property against Olsen. (Am. Compl. at ¶ 13.) This claim is dismissed as Olabopo has not availed himself of the available post-deprivation remedy in state court. The Court also dismisses Olabopo's allegations that Olsen violated his Fourth Amendment rights against illegal searches and illegal entry.[8] (*Id.* at ¶ 9.)

"When a claim under section 1983 is based on an alleged deprivation of property in violation of the [F]ourteenth [A]mendment, a court must make 'the following inquiry: (a) whether a property right has been identified; (b) whether governmental action with respect to that property right amounts to a deprivation; and (c) whether the deprivation, if one be found, was visited upon the plaintiff without due process of law.'" *Greene v. Blooming Grove*, 935 F.2d 507, 509–10 (2d Cir. 1991) (quoting *Fusco v. Connecticut*, 815 F.2d 201, 205 (2d Cir. 1987)). "The extent and nature of a property right protected by the [F]ourteenth [A]mendment, as well as whether the right exists at all, are determined by reference to state law." *Id.*

New York City local law "empowers field inspectors with the discretion to issue a vacate order when a building is 'dangerous or detrimental to life or health' and the inspector certifies that an emergency exists requiring such action to preserve life and safety." *Andrews v. City of New York*, No. 01-CV-7333 (CPS), 2004 U.S. Dist. LEXIS 30290, at *39–40 (E.D.N.Y. Nov. 22, 2004). "Immediately upon the posting of an order upon the premises," authorized officers and

---

[8] Olabopo also asserts these claims against the NYPD. However, the Court dismissed the NYPD as a party, above, as it is a non-suable entity.

9

employees of the city may "act upon and enforce" the order. *Id.* at *7. "Although discretion may be abused, it is not a requirement of due process that there be judicial inquiry before the discretion is exercised." *Id.* at *40. "Where only property rights are concerned, an opportunity for a hearing and a judicial determination at some stage after the exercise of discretion is all that is constitutionally required." *Id.*

Here, the Court takes judicial notice of the Notices of Violation that Olsen posted at the residence where Olabopo was living[9] that indicate that Olabopo's residence was unsafe and that the remedy was to "discontinue illegal use immediately." *Brodeur v. City of New York*, No. 04-CV-1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) ("A court may also consider . . . public documents of which the plaintiff has notice."); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that a Court can take judicial notice of documents integral to the complaint in considering a motion to dismiss). Olabopo had notice of the violations and incorporated them by reference in the amended complaint. (Am. Compl. at ¶ 13 ("the Department of Building[s] now listed violations against the apartment").) Once the order was posted on the premises, Olsen had the discretion to "act upon and enforce" the order. *Andrews*, 2004 U.S. Dist. LEXIS 30290, at *7.

Following the eviction, Olabopo failed to avail himself of the available post-deprivation remedy – an Article 78 proceeding in state court. "The housing part of the Civil Court has particular jurisdiction over 'actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards.'" *City of New York v. Torres*, 631 N.Y.S.2d 208, 209 (1st Dep't 1995) (quoting Civ. Ct. Act § 110(a)). An Article 78

---

[9] The Notices of Violation that Olsen posted are publically available at the City's Office of Administrative Trials and Hearings website (http://a820-ecbticketfinder.nyc.gov/searchHome.action) and are filed with defendants' motion (Ex. B, Notices of Violation (Doc. No. 32-2)).

proceeding is "available to compel public officials to comply with their responsibilities," *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002), and allows one aggrieved by administrative action to "raise questions as to the legality of [an] administrative action" *Empire Transit Mix, Inc. v. Giuliani*, 37 F. Supp. 2d 331, 337–38 (S.D.N.Y. 1999). "Among the issues that may be raised is 'whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.'" *Id.* at 337–38 (quoting N.Y. CPLR § 7803(3) (McKinney 1994)). The statute of limitations for instituting an Article 78 proceeding is four months. *See Vandor*, 301 F.3d at 39. That period has long passed, and Olabopo posits no argument for equitable tolling, or for application of a different limitations period. "[A] claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open." *Id.* (internal citation and quotation marks omitted). Accordingly, Olabopo's procedural due process violation claim is dismissed.

Olabopo has likewise failed to adequately plead that Olsen violated his Fourth Amendment rights. "[C]onduct that serves an investigative or administrative purpose, such as determining compliance with statutory or regulatory codes, has been found to fall within the scope of the Fourth Amendment." *Heinrich ex rel. Heinrich v. Sweet*, 62 F. Supp. 2d 282, 317 (D. Mass. 1999). Here, Olabopo alleges that Olsen illegally entered his apartment and tried to illegally search the apartment without a warrant.

In terms of the alleged entry, the law is "clear" that absent exigent circumstances or consent, the Fourth Amendment's prohibition against "unreasonable" searches and seizures, *see* U.S. Const., Amend IV, requires that officers obtain a search warrant before entering a private residence. *See Soldal v. Cook Cnty.*, 506 U.S. 56, 65–66 (1992) (holding that in absence of

11

exigency or consent, landlord's removal of a mobile home before eviction with aid of sheriff was a "seizure" under the Fourth Amendment). The essential question in determining whether exigent circumstances justified a warrantless entry is "'whether law enforcement agents were confronted by an "urgent need" to render aid or take action.'" *See United States v. Gordils*, 982 F.2d 64, 69 (2d Cir.1992) (quoting *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (en banc)). Here, the Notice of Violation that Olsen posted at Olabopo's residence clearly indicates the existence of exigent circumstances – "no signs of smoke or carbon detectors present. . . . No adequate means of egress present" – that required immediate action. *See, e.g.*, *Flatford v. City of Monroe*, 17 F.3d 162, 168 (6th Cir. 1994) ("An emergency eviction from one's home is a significant intrusion. However, where the need to protect lives is the basis for such an intrusion, government officials should not be made to hesitate in performing their duties, particularly where postdeprivation remedies can immediately correct any errors in judgment."). Thus, Olabopo has failed to plausibly plead that Olsen illegally entered his apartment.

As to the alleged illegal search, the "[s]earch-and-seizure analysis begins with a determination as to whether there was an actual search or seizure by the government." *Burka v. New York City Transit Auth.*, 680 F. Supp. 590, 603 (S.D.N.Y. 1988); *see also Battle v. Baalaer*, No. C10-5410 (RSM) (MAT), 2012 WL 1945383, at *4 (W.D. Wash. Mar. 30, 2012), *report and recommendation adopted*, 2012 WL 1945140 (W.D. Wash. May 30, 2012), *aff'd*, 536 F. App'x 725 (9th Cir. 2013) ("The absence of any actual search or seizure undermines plaintiff's Fourth Amendment claim."). Olabopo alleges that Olsen "<u>tried</u> to illegally search their apartment." (Am. Compl. at ¶ 10 (emphasis added); *see also id.* ("Department of Buildings Inspector Olsen was told he was violating their due process rights by <u>trying</u> to forcefully search through their

apartment" (emphasis added)).) Olabopo does not allege that Olsen actually searched his apartment. Therefore, Olabopo's Fourth Amendment claims against Olsen are dismissed.

V. **Municipal Liability**

Even assuming, arguendo, that the defendants' actions violated Olabopo's constitutional rights, he has failed to allege any basis for municipal liability against the City.

A municipal entity may be found liable under § 1983 "only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To state a claim against a municipality, therefore, a plaintiff must allege plausibly that an unlawful action was implemented or executed pursuant to a governmental policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, at 690–91 (1978). A plaintiff may do so by alleging adequately a link between a constitutional injury and "(1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." *Zherka v. Difiore*, 412 Fed. App'x 345, 348 (2d Cir. 2011). Where a plaintiff pleads no facts to suggest an alleged municipal policy, custom or practice actually existed, the complaint is fatally deficient and warrants dismissal. *Lewis v. City of New York*, No. 12-CV-2836 (RRM), 2013 WL 6816615, at *11 (E.D.N.Y. Dec. 24, 2013). Dismissal is also warranted when a plaintiff fails to allege that an individually named defendant had policymaking authority. *Id.*

Here, the complaint is devoid of any facts that suggest an inference of municipal liability against the City. Besides being named in the caption of the complaint, Olabopo does not allege any facts against the City. (*See generally* Am. Compl.) Moreover, Olabopo does not allege that any of the defendants who allegedly participated in the violation of his constitutional rights were

acting pursuant to a policy or practice of the City.[10]  Similarly, Olabopo does not allege any facts to suggest that the individual defendants have final policymaking authority for the City.  Absent such allegations, the complaint is fatally deficient, and Olabopo's claims against the City are dismissed.

### VI.  New York State Law Claims

To the extent that Olabopo asserts New York state law claims against City employees for actions undertaken in the scope of their employment, he fails to state a claim.  A "notice of claim is a condition precedent to the filing of an action against an employee of the City of New York." *Jean-Laurent v. Wilkerson*, 461 Fed. App'x 18, 24 n.3 (2d Cir. 2012).  Pursuant to N.Y. Gen. Mun. Law § 50-e(1)(a), a notice of claim must be filed within 90 days after the claim arises.  *Id.*  Also, "pursuant to Section 50-i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  *Canzoneri v. Inc. Vill. of Rockville Ctr.*, 986 F. Supp. 2d 194, 206 (E.D.N.Y. 2013) (citing *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006)).  "The plaintiff[] bear[s] the burden of demonstrating compliance with the notice of claim requirement."  *Id.*  Olabopo has not met this burden, and therefore, his state law claims against City employees are dismissed.

### CONCLUSION

Olabopo's amended complaint fails to state a claim against the City, Lewis, Norris, Olsen, Sotiroff, Tjornhom, Zaleski, and Zielinski.  However, in light of Olabopo's *pro se* status,

---

[10] To the extent that Olabopo does assert such a claim against the NYPD with regard to unlawful searches and stop and frisks (*see* Am. Compl. at ¶ 21), Olabopo is granted leave to amend the complaint to name the City or the individual named or John Doe officers responsible for these alleged violations, and to provide further facts to support his claims in accordance with this Order.

14

Olabopo is given thirty (30) days from the date of this Memorandum and Order to file an amended complaint in accordance with the discussion herein. *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000). Should Olabopo have a basis for his claims against the individual defendants or the City, he should provide facts in support of such claim(s) and demonstrate that he has exhausted his administrative remedies where necessary in his amended complaint. Olabopo is directed that his amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure and it must "plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Olabopo is advised that the amended complaint will completely replace the prior complaints and that it must therefore include all of the claims that he intends to bring against all defendants. The amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this Order.

As the NYPD, the FDNY, and the New York City Department of Buildings are non-suable entities, Olabopo's allegations against these defendants are dismissed. If Olabopo fails to amend his complaint within thirty (30) days of the date of this Order, his claims against the City, Lewis, Norris, Olsen, Sotiroff, Tjornhom, Zaleski, Zielinski will also be dismissed.

The Clerk of Court is respectfully requested to mail a copy of this Memorandum and Order to Olabopo and note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York  
       September 28, 2016

*Roslynn R. Mauskopf*  
_____  
ROSLYNN R. MAUSKOPF  
United States District Judge